## En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| CARLOS MATTEI NAZARIO Y OTROS<br><br>Demandante-Peticionaria<br><br>.V<br><br>MIGUEL P. VELEZ & ASOC.<br><br>Demandado-Recurrido | Apelación<br><br>**TSPR98-54** CARLOS MATTEI NAZARIO V. MIGUEL P. VELEZ & ASOC |

Número del Caso: **AC-95-34**

>   CARLOS MATTEI NAZARIO V. MIGUEL P. VELEZ & ASOC.

Abogados Parte Peticionaria:

>   LCDO. VICTOR M. RIVERA TORRES

>   RIVERA COLON, RIVERA TORRES & RIOS BERLY

Abogados Parte Recurrida:

>   LCDO. MARIO A. PRIETO BATISTA

Abogados Parte Interventora:

Tribunal de Instancia: Sub-Seccion Distrito,

>   SALA DE SAN JUAN

Juez del Tribunal de Primera Instancia:

>   Hon. CARLOS S. DAVILA PEREZ

Tribunal de circuito de Apelaciones: **CIRCUITO REGIONAL VII**

Juez Ponente:

>   **Hon. GONZALEZ ROMAN**

Fecha: 5/7/1998

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Carlos Mattei Nazario,

Nellie Cedó y la

Sociedad de Gananciales

Compuesta por ambos

Demandantes-Apelantes

  v.

AC-95-34

Miguel P. Vélez & Asoc.

Demandado-Apelado

Opinión del Tribunal emitida por el Juez Asociado señor **Hernández Denton**

San Juan, Puerto Rico, a 7 de mayo de 1998.

El presente recurso de apelación cuestiona la sentencia del Tribunal de Circuito de Apelaciones que revocó sumariamente el dictamen del tribunal de instancia en el que a tenor con el Art. 1476 del Código Civil concluyó que el Sr. Carlos Mattei Nazario había sido despedido injustificadamente. El foro de instancia condenó sumariamente a la sociedad Miguel P. Vélez & Asoc. al pago de $9,860.00 en salarios dejados de devengar, intereses al 8.25%, costas y $1,000.00 en honorarios de abogado. Por su parte, el foro apelativo entendió que existía controversia sobre hechos esenciales que impedía la

adjudicación del caso por la vía sumaria. Estimamos que no existe controversia de hechos esenciales que impida resolver el caso por la vía sumaria. Además, resolvemos que el remedio que el apelante Mattei Nazario tiene a su disposición en el presente caso es una acción por incumplimiento contractual, y que en la situación particular ante nos, tal incumplimiento no se configuró. Por ende, revocamos y desestimamos la acción.

**I.**

En 1992, Miguel P. Vélez y Asociados (en adelante Vélez & Asoc.), firma de consultoría en ingeniería e inspección desempeñada dentro de la industria de la construcción, contrató los servicios de Carlos Mattei Nazario para la inspección de obras de construcción. El contrato otorgado entre las partes estipuló lo siguiente:

**NOTIFICACIÓN DE NOMBRAMIENTO**

Nombre: Carlos Mattei Nazario___

Seguro Social: 580–50–340_____

Posición: Inspector_____

Clasificación: _____

Este nombramiento será efectivo el 10 de agosto de 1992 hasta el 1 de abril de 1994. El empleado cuyo nombre aparece en este documento estará en un periodo probatorio de 90 días a partir de la fecha de efectividad. Una vez aprobado el periodo probatorio, su nombramiento se extenderá hasta la fecha de terminación establecido [ sic] en el presente documento.

La vigencia de este nombramiento posterior a la aprobación del periodo probatorio, estará sujeto [ sic] al cumplimiento de las normas administrativas de Miguel P. Vélez & Associates, cuyo documento usted recibió al momento de aceptar el presente nombramiento.

Usted recibirá un salario de $8.00 por hora. Miguel P. Vélez & Associates es una empresa relacionada a la industria de la construcción, por lo cual a sus empleados le son de aplicabilidad los decretos mandatorios y vigentes o que en el futuro promulgue la Junta de Salario Mínimo de Puerto Rico, respecto a esta industria.

Fd. (representantes de Vélez & Asoc.)

**APROBADO**

ACEPTADO

Fdo. <u>(Carlos Mattei Nazario)</u>

Firma del Empleado

Véase Apéndice de la Apelación, a la pág. 51.

El contrato de servicios no especificaba la obra a la cual Mattei Nazario estaría asignado para su inspección. A tenor con el mismo, la vigencia del nombramiento estaría sujeta al cumplimiento de las normas administrativas de dicha firma, según plasmadas en el Reglamento de Personal de la empresa, el cual fue entregado al empleado en el momento de la firma del contrato. Dicho Reglamento contemplaba entre las razones que constituirían justa causa para cesantear a un empleado:

Cierre total temporero o parcial de las operaciones del establecimiento durante la vigencia del nombramiento del empleado.

Reducciones en el empleo por motivo de reorganización de la empresa o razones económicas.

Reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de servicios prestados que prevalecen al momento de la cesantía. Apéndice de la Apelación, a la págs. 52-54.

Desde que comenzó a trabajar para Vélez & Asoc., Mattei Nazario se desempeñó como inspector de la construcción del puente Teodoro Moscoso sobre la laguna San José en Isla Verde.

El 17 de septiembre de 1993, Mattei Nazario fue despedido de su empleo, faltando aún veintiocho (28) semanas para el vencimiento del contrato de servicios. La razón para el despido aducida por el patrono en una comunicación notificada al empleado una semana antes de la efectividad del mismo lo fue la necesidad de reducir el personal debido a que las labores en el Puente Teodoro Moscoso se encontraban en su fase final. Véase, Memo de 15 de septiembre de 1993, Apéndice de la Apelación, a la pág. 55. El patrono llegó a dicha determinación a base de una inspección ocular del adelanto de la obra.

Luego de ello, Mattei Nazario, su esposa Nellie Cedó y la sociedad legal de gananciales constituida por ambos, presentaron una querella contra Vélez & Asoc. ante el entonces Tribunal de

Distrito, Sala de San Juan, al amparo del procedimiento especial de carácter sumario que establece la Ley Núm. 2 de 17 de octubre de 1961. 32 L.P.R.A. sec. 3118 et seq. Apoyados en el Art. 1476 del Código Civil, 31 L.P.R.A. sec. 4114 (1990), y en lo resuelto en Cassasús v. Escambrón Beach Hotel, 86 D.P.R. 375 (1962), reclamaron las sumas de $9,860.00, en salarios dejados de devengar, y $20,000.00, en resarcimiento de los perjuicios causados a raíz del incumplimiento del contrato de empleo.

Vélez & Asoc. compareció oportunamente alegando como defensa la existencia de justa causa para el despido, según contemplada por la Ley sobre Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976. 29 L.P.R.A. sec. 185ª et seq. Adujo que la reducción en el volumen de trabajo constituyó la razón del despido.

Luego de una serie de trámites procesales y de encausar la reclamación en un procedimiento ordinario, el tribunal de instancia resolvió a favor de Mattei Nazario. Dicho foro concluyó que no existía controversia en torno a que el contrato de trabajo entre Mattei Nazario y Vélez & Asoc. contemplaba un período fijo de duración; que Mattei Nazario fue despedido antes de vencer dicho período; y que Vélez & Asoc. retuvo a dos inspectores, también contratados por término fijo, de menor antigüedad que el querellante. En vista de ello, emitió sentencia de forma sumaria en la que concluyó que no había mediado justa causa para el despido, conforme lo requerido en el Art. 1476 del Código Civil, pues el patrono no despidió a Mattei Nazario siguiendo un orden de antigüedad. En este sentido, el foro de instancia aplicó a su interpretación del Art. 1476 la definición de justa causa para el despido que contiene la Ley Núm. 80, supra, y consideró como aplicable a Vélez & Asoc. la disposición de dicha ley que obliga a los patronos a considerar el criterio de antigüedad al despedir a un empleado cuando la razón para el despido es la reducción en el nivel de los servicios prestados. 29 L.P.R.A. sec 185c.

Finalmente, condenó a la firma querellada al pago de $9,860.00 en concepto de salarios dejados de devengar, más los intereses al 8.25%, $1,000.00 en concepto de honorarios de abogado, y las costas del litigio.

Ambas partes solicitaron la reconsideración de dicho dictamen. El tribunal consideró tardía la alegación traída en reconsideración por Vélez & Asoc. respecto a que ésta utilizó el criterio de capacidad para retener en el empleo a otros empleados de menos antigüedad que Mattei Nazario. En cuanto a la insistencia de los querellantes en reclamar indemnización por

los daños y perjuicios sufridos, el foro a quo sostuvo su determinación de no concederlos por entender que el patrimonio de los querellantes no había sufrido consecuencias desfavorables al no disponer oportunamente del dinero al cual tenían derecho.

Oportunamente, la firma Vélez & Asoc. presentó recurso de apelación ante el Tribunal de Circuito de Apelaciones. En esencia, planteó ante dicho foro que el tribunal de instancia había incidido al emitir sentencia sumaria, en vista de que existía una genuina controversia respecto a la existencia de justa causa para el despido de Mattei Nazario.

Al evaluar el recurso, el foro apelativo concluyó que las normas que provee la Ley Núm. 80 para las instancias en que se reduce personal en una empresa no son de aplicación al caso de autos, por ser el contrato uno por tiempo determinado, y que sólo podría hacerse referencia a dicha Ley en cuanto a su definición de justa causa. Además, por entender que existía controversia material sobre algunos hechos esenciales que ameritaban ser ventilados en sus méritos dentro de un juicio plenario, el Tribunal de Circuito de Apelaciones revocó la sentencia apelada y devolvió el caso para la continuación de los procedimientos.

Inconforme, Mattei Nazario acudió ante nos mediante recurso de apelación, amparándose en el Art. 3.002, inciso (f), de la Ley de la Judicatura de 1994, entonces vigente. Nos señala que la sentencia sumaria emitida por el tribunal de instancia se basa en hechos admitidos por la parte querellada, por lo que entiende no existe controversia material sobre hechos esenciales. Plantea, además, que el tribunal apelativo erró al considerar que la norma sobre antigüedad, contemplada en la Ley Núm. 80, no aplicaba a casos instados al amparo del Art. 1476 del Código Civil por despido injustificado de un empleado contratado por tiempo determinado.

Examinados los alegatos de las partes así como los documentos que obran en autos y el derecho aplicable, estamos en posición de resolver.

## II.

Antes de considerar el planteamiento en torno a si existe controversia sobre hechos esenciales que impida la adjudicación del caso de forma sumaria, consideramos apropiado examinar la naturaleza del remedio al que Mattei Nazario tiene derecho a la luz de la relación contractual que existía entre las partes.

A.

Como es sabido, en Puerto Rico rige el principio de la libertad de contratación según el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral ni al orden público. Art. 1207 del Código Civil de P.R., 31 L.P.R.A. sec. 3372 (1990).

En el ámbito de las obligaciones y contratos, es doctrina fundamental que cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil de P.R., 31 L.P.R.A. sec. 3471 (1990). Sabido es, también, que a partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo conforme a la buena fe, al uso y a la ley. Art. 1210 del Código Civil de P.R., 31 L.P.R.A. sec. 3375 (1990).

En el contrato de arrendamiento de obras o servicios una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio a cambio de un precio cierto. Art. 1434 del Código Civil de P.R., 31 L.P.R.A. sec. 4013 (1990). Habrá un contrato de arrendamiento de servicio siempre que consensualmente con la prestación personal coexista el precio cierto. Morales v. Alvarez, 63 D..R. 208 (1944); 2 Luis Diez-Picazo & Antonio Gullón, Sistema de Derecho Civil, 462 (3ra ed. 1982). Este contrato se caracteriza por ser consensual, pues se perfecciona con el mero consentimiento; bilateral, al coexistir obligaciones recíprocas; y, a título oneroso, dada la intervención de un precio. 2 Diez-Picazo & Gullón, supra.

Los contratos de servicios, también conocidos como contratos de trabajo, pueden pactarse por tiempo indeterminado o indefinido, o por un período fijo de duración. Esto último puede hacerse de dos maneras: con una fecha específica de vencimiento o por el tiempo que tome la realización de determinada obra.

En nuestra jurisdicción, los contratos de servicio están regulados por las leyes que protegen los derechos de los trabajadores. Entre éstos se encuentran el derecho a un salario mínimo, horas extras, paga por trabajo realizado, vacaciones, y otros. Estos derechos son irrenunciables y operan automáticamente, sin que dependan de la voluntad del trabajador para hacerlos valer. Ruy N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho

laboral puertorriqueño, 3 (1989). En particular, según se desprende de varios estatutos, es política pública del Estado desalentar los despidos injustificados.

El Art. 1476 del Código Civil, aplicado al caso de marras por los tribunales de instancia y apelativo, establece que "[l]os empleados de labranza, menestrales, artesanos y demás trabajadores asalariados por cierto término o para cierta obra no pueden despedirse ni ser despedidos antes del cumplimiento del contrato, sin justa causa". 31 L.P.R.A. sec. 4114 (1990). En Camacho Arroyo v. E.L.A., Opinión y Sentencia de 19 de octubre de 1992, 132 D.P.R. ___ (1992), tuvimos la oportunidad de interpretar el alcance de dicho articulado.

Allí, nos confrontamos con la situación de un empleado gerencial, cuyo contrato de empleo contemplaba su resolución por cualquiera de las partes siempre y cuando mediara notificación a tales efectos con treinta (30) días de anticipación. En cuanto a la aplicación del Art. 1476 expresamos:

> A la luz de la enumeración hecha por el legislador en dicha disposición, es difícil llegar a la conclusión de que quiso incluir el tipo de trabajo eminentemente gerencial realizado por Camacho Arroyo. Coordinar programas para jóvenes residentes en los sistemas de vivienda pública del país no guarda siquiera una relación remota con el tipo de trabajo que lleva a cabo un artesano o un empleado de la labranza. Id.

A base del principio de interpretación estatutaria de ejusdem generis (del mismo género), determinamos que el mismo es aplicable únicamente a aquellas labores que requieren destrezas manuales.

En el caso de marras, Mattei Nazario fue contratado como inspector de obras de construcción. El contrato sólo usa el calificativo de "inspector" sin asignarle ninguna clasificación ocupacional adicional. Aunque su contrato de servicio no contiene una descripción específica de las tareas que conlleva dicho puesto, tomamos conocimiento judicial respeto a que de ordinario un inspector de obras no lleva a cabo labores manuales, sino que se dedica a supervisar las labores manuales que otros realizan. En este caso, supervisa los trabajos realizados por los obreros de la construcción.

Las labores para las cuales fue contratado Mattei Nazario no conllevan el uso de destrezas manuales y, por ende, no puede

invocar el Art. 1476 ante su despido. Tanto el Tribunal de Circuito de Apelaciones como el tribunal de instancia partieron de la premisa de que a la situación ante nos le aplicaba dicho articulado. Incidieron ambos foros al decidir de ese modo, sin seguir nuestros pronunciamientos en Camacho Arroyo v. E.L.A., supra.

Tampoco resulta de aplicación al caso de marras la Ley Sobre Despido Injustificado, Ley Núm. 80, supra, la cual concede un remedio económico a los empleados despedidos injustificadamente de sus empleos. Dicha Ley cobija únicamente a los empleados contratados en la empresa privada por tiempo indeterminado. En el presente caso el contrato de servicio entre las partes, como antes se expresó, fue por tiempo determinado.

Destacamos sin embargo, que en atención al principio de libertad de contratación y a la política pública plasmada en la Ley Núm. 3 de 24 de febrero de 1988, un patrono podría válidamente incorporar en un contrato de esta naturaleza las causales para cesantear o despedir que sean apropiadas y pertinentes al buen y normal funcionamiento de su empresa. Estas causales, sin embargo, no deben estar reñidas con nuestro ordenamiento jurídico. En este contexto, la Ley Núm. 80 constituye un marco de referencia para evaluar la razonabilidad de las causales de justa causa para el despido que las partes privadas incorporen en contratos de servicio por tiempo determinado.

III.

En ausencia de remedio de carácter especial para este tipo de situación, es menester acudir a la doctrina general de los contratos. Lo hacemos conscientes de la política pública y propósito del Estado de proteger al trabajador en la tenencia de su empleo, desalentando los despidos injustificados y caprichosos.

Como es sabido, cuando el incumplimiento de una obligación contractual produjere daños a una de las partes contratantes, procede una acción de daños y perjuicios por incumplimiento contractual. El Código Civil de Puerto Rico distingue entre los daños derivados del incumplimiento de un contrato, Art. 1054, y los derivados del incumplimiento de unas obligaciones y deberes impuestos por la naturaleza y por la ley, necesarios para la convivencia social, Art. 1802 del Código Civil de P.R. 31 L.P.R.A. secs. 3018 y 5141 (1990).

Las acciones ex contractu se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito, y tienen por objeto que se cumplan las promesas sobre las cuales las partes otorgaron su consentimiento. Ramos v. Orientalist Rattan Furnt., Inc., Opinión y Sentencia de 15 de junio de 1992; 131 D.P.R. ___ (1992); Ocasio Juarbe v. Eastern Airlines, Inc., 125 D.P.R. 410, 419 (1990); Santiago Nieves v. A.C.A.A., 119 D.P.R. 711, 716 (1987); Mejías v. López, 51 D.P.R. 21, 26 (1937). Si el daño surge exclusivamente como consecuencia del incumplimiento contractual, la acción de daños ex contractu sería el único remedio disponible.

Por ende, para que proceda esta acción tiene que haber habido un acuerdo de voluntades que genere una obligación, situación o estado de derecho resultante de un convenio y que haya creado unas expectativas a base de las cuales actuaron las partes. De ordinario, cada parte confía en que la otra parte cumplirá con lo libremente pactado, conforme al principio de obligatoriedad de los contratos y a la buena fe. Una acción u omisión voluntaria por la cual resulte incumplida una obligación anteriormente constituida da origen a la acción de daños contractuales.

Cuando se trata de contratos de servicios por tiempo determinado, el dejar de prestar servicios al principal, por una parte, o, el dejar cesante al empleado, por otra, podría constituir una infracción al contrato existente, si tales actuaciones se desvían de lo acordado. En tal caso, quien sufra daños por motivo del quebrantamiento contractual tendrá a su favor una acción para recobrar los daños y perjuicios que le hayan sido causados.

En cuanto al cómputo de la indemnización a ser concedida, el Art. 1059 del Código Civil dispone lo siguiente:

> La indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvas las disposiciones contenidas en las secciones siguientes. 31 L.P.R.A. sec. 3023 (1990).

Sin embargo, el Art. 1060 limita la responsabilidad del deudor e buena fe a los "daños y perjuicios [...] previstos o que se hayan podido prever al tiempo de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento". 31 L.P.R.A. sec. 3024 (1990).

En cuanto a la compensación que debe ser concedida en este tipo de casos, hemos resuelto que constituye prima facie el sueldo dejado de devengar durante el tiempo en que hubiera estado vigente el contrato. Schneider v. Tropical Gas Company, Inc., 95 D.P.R. 626, 630, 632 (1967); Villar & Co., Inc. v. Conde, 37 D.P.R. 706 (1928); Hardouin v. Krajewski-Pesant Co., 22 D.P.R. 689, 702 (1915). Anteriormente hemos considerado que cuando una persona contratada por tiempo determinado es despedida de su empleo, tiene derecho, nominalmente y prima facie, a recibir remuneración por todo el período que abarca el contrato. Villar & Co., Inc. v. Conde 37 D.P.R. a la pág. 713; véase también, García Fernández, Ex Parte, 44 D.P.R. 296, 305-306 (1932). En dichos casos expresamos que el peso de la prueba para disminuir dicha cuantía recae sobre la persona que despide al empleado.

Con relación a las angustias y daños mentales, reiteradamente hemos resuelto que, de ordinario, cuando se trata de incumplimiento contractual las mismas no proceden a no ser que éstas hubieran podido preverse al tiempo de constituirse la obligación, y fueran consecuencia necesaria de la falta de cumplimiento del contrato. Art. 1960 del Código Civil de P.R., 31 L.P.R.A. sec. 3024 (1990); Camacho v. Iglesia Católica, 72 D.P.R. 353, 363 (1951); Díaz v. Palmer, 62 D.P.R. 111 (1943); Díaz v. Cancel, 61 D.P.R. 888 (1943); González Mena v. Dannermiller Coffee Co., 48 D.P.R. 608, 617 (1935).

Examinada la doctrina pertinente en materia de contratos, resulta forzoso concluir que el remedio que tendría a su disposición un empleado contratado por tiempo determinado o para la realización de cierta obra, de las circunstancias del apelante Mattei Nazario, cuando es despedido de su empleo antes del vencimiento del contrato y en violación a los términos del mismo, lo es la acción de daños por incumplimiento contractual.

Aclarado lo anterior, evaluemos, por tanto, si existe una genuina controversia de hechos que impida la adjudicación del caso en esta etapa de los procedimientos, y si, de no ser tal la situación, si, en efecto, tal quebrantamiento contractual quedó configurado.

## IV.

Un examen del expediente del caso revela que los siguientes hechos esenciales no están en controversia. Primero, Mattei Nazario suscribió un contrato de servicios con Vélez & Asoc. por un término determinado de aproximadamente veinte meses. Segundo, ese contrato de servicio incorporaba por referencia las normas

administrativas de la compañía, las cuales le fueron entregadas al apelante al momento de su contratación. Véase Selosse v. Fundación Educativa Ana G. Méndez, 122 D.P.R. 534 (1988). Así, como único podría despedirse al empleado antes del vencimiento de su contrato sería si se configuraba alguna de las causas reconocidas en el Reglamento de Personal para cesantear o despedir empleados.

Tercero, desde que fue contratado, Mattei Nazario laboró como inspector de construcción en el Puente Teodoro Moscoso. Cuarto, Mattei Nazario fue despedido antes de que venciera el término de duración del contrato de servicios. Y quinto, la razón aducida para ello por la compañía antes de que el despido fuera efectivo, lo fue la necesidad de reducir el personal de la compañía debido a que las labores en el Puente Teodoro Moscoso se encontraban en su fase final.

Este último aspecto no fue controvertido por ninguna de las partes a lo largo del proceso. De hecho, el propio Mattei Nazario, al plantear que no se siguió un orden de antigüedad al despedir como fundamento de su alegación de despido injustificado bajo el Art. 1476 del Código Civil, da por cierto en su recurso el hecho de que su cesantía fue motivada por el adelanto de la obra. Véase, Escrito de Apelación, a la pág. 7. Así, aduce que es un hecho no controvertido que el patrono no siguió el orden de antigüedad al despedir porque lo aceptó y porque expresamente afirmó que la razón para el despido lo fue la inspección ocular del adelanto de la obra.

Asimismo, surge del expediente que el Puente Teodoro Moscoso fue abierto al público antes de que terminara la vigencia el período por el cual Mattei Nazario fue contratado inicialmente, lo que es claramente indicativo de que al momento de la cesantía de Mattei Nazario la obra estaba considerablemente adelantada. Por ello, además, podría concluirse razonablemente que hubo una reducción en el volumen de los servicios prestados por Vélez & Asoc. Debemos destacar, también, que fue el propio querellante quien promovió la moción de sentencia sumaria en instancia aduciendo que los hechos esenciales no estaban en controversia, y quien ante nos formula igual planteamiento como fundamento para revocar al Tribunal de Circuito de Apelaciones.

Como se sabe, la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, permite que cualquiera de las partes en un pleito pueda solicitar que el tribunal emita sentencia sumaria a su favor. La moción al respecto debe ir acompañada de documentos que apoyen los hechos que el promovente alega que no

están en controversia y que avalan su posición. Colegio de Ingenieros v. A.A.A., Opinión y Sentencia de 21 de octubre de 1992, 131 D.P.R. ___ (1992). Al evaluar la moción, el tribunal examinará los documentos que le han sido sometidos y emitirá sentencia sumaria solamente si a la luz de los documentos sometidos, tanto por la parte promovente de la moción, como por la parte promovida, además de los que contienen los autos, "no hay controversia real en cuanto a ningún hecho material y como cuestión de derecho procede dictarse [...]". Regla 36.3, 32 L.P.R.A. Ap. III, R. 36.3. Colegio de Ingenieros v. A.A.A., supra; Méndez Arocho v. El Vocero de Puerto Rico, Opinión y Sentencia de 30 de junio de 1992, ___ D.P.R. ___ (1992).

Hemos destacado en el pasado que "[e]l hecho de que una parte presente una moción de sentencia sumaria no es garantía [de] que una vez se determine que ésta procede, necesariamente hay que resolver a favor de quien la presentó". Consejo de Titulares del Condominio Parksdide, etc. v. MGIC Financial Corporation, Inc., Opinión y Sentencia de 13 de junio de 1991, 129 D.P.R. ___ (1991). El tribunal debe analizar los hechos de la forma más favorable a la parte que se opone a ella y emitirá sentencia a favor de la parte a la cual le asiste el derecho. Colegio de Ingenieros v. A.A.A., supra.

A la luz de los hechos que antes expusimos, los cuales no están en controversia, procede resolver desde este estrado apelativo que en el presente caso no se configura un incumplimiento contractual. La razón esbozada por el patrono se relacionaba exclusivamente con la inspección de la construcción del puente Teodoro Moscoso. Dicha razón puede enmarcase dentro del inciso "C", que contempla la parte "V" del Reglamento de Personal como causa justificada para cesantear. El mismo establece que constituirá justa causa para cesantear a un empleado "reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de servicios prestados que prevalecen al momento de la cesantía".

Desde que Mattei Nazario firmó el contrato en cuestión sabía que podría ser cesanteado en cualquier momento si surgía una situación como las descritas en el Reglamento de Personal, tal como lo fue en este caso la reducción de volumen de los servicios prestados por Vélez & Asoc. Su contrato, así como el reglamento administrativo de Vélez & Asoc. no vislumbran la antigüedad de los empleados como criterio para determinar quien debía ser cesanteado ante una reducción en el volumen de los servicios prestados. Por ello, erró el tribunal de instancia al acudir al Art. 3 de la Ley Núm. 80 para decidir una controversia

que debía ser resuelta por las disposiciones contractuales libremente convenidas por las partes.

Por los fundamentos antes expuestos, procede revocar la sentencia del Tribunal de Circuito de Apelaciones emitida en el caso de epígrafe y desestimar la reclamación instada contra Vélez & Asociados.

Se emitirá la Sentencia correspondiente.


**Federico Hernández Denton**

Juez Asociado

Materia: **DESPIDO ILEGAL**

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Carlos Mattei Nazario,

Nellie Cedó y la

Sociedad de Gananciales

Compuesta por ambos

Demandantes-Apelantes

v. AC-95-34

Miguel P. Vélez & Asoc.

Demandado-Apelado

**SENTENCIA**

San Juan, Puerto Rico, a 7 de mayo de 1998.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia emitida en el caso de epígrafe por el Tribunal de Circuito de Apelaciones, Circuito Regional I de San Juan.

Se ordena la desestimación de la presente demanda.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García disintió sin Opinión escrita. La Juez Asociada señora Naveira de Rodón concurre sin Opinión escrita.

Isabel Llompart Zeno

Secretaria del Tribunal Supremo

Retornar al índice anterior